IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, )<br>)<br>    Plaintiff, )<br>    v. )<br>THORNTON TOWNSHIP HIGH SCHOOL )<br>DISTRICT 205 BOARD OF EDUCATION, )<br>MILTON McGRIGGS, LEOTIS SWOPES, )<br>JAMES WALTON, and STEVE VALANT )<br>    Defendants. )<br>) | No. 2019 cv 7477<br><br><br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, JANE DOE, by and through counsel, GOLDEN LAW and SAMUELS & ASSOCIATES, LTD., and complaining of the Defendants, THORNTON TOWNSHIP SCHOOL DISTRICT 205 BOARD OF EDUCATION, MILTON McGRIGGS, LEOTIS SWOPES, JAMES WALTON and STEVEN VALANT and states as follows:

### JURISDICTION

1. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, *et seq.*, Title IX, 20 U.S.C. § 1681, *et seq.*, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States.

3. 42 U.S.C §1983 contains no statute of limitations. In this case, the twenty (20) year statute of limitations in 735 ILCS 5/13-202 is the analogous and applicable state statute of limitations.

## PARTIES

4. PLAINTIFF JANE DOE was, at all times relevant, a minor, female student who attended Thornridge High School. She is a resident of Cook County, Illinois.

5. DEFENDANT MILTON McGRIGGS was, at the time of this occurrence, a 49-year old softball and basketball coach employed by Defendant School District. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his individual capacity.

6. DEFENDANT JAMES M. WALTON, JR. ("Walton") Principal of Thornridge High School in Dalton, Illinois in April 2016. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his individual capacity.

7. STEVE VALANT, ("Valant") was an Administrator at Thornridge High School in Dalton, Illinois in April 2016. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his individual capacity.

8. DR. LEOTIS SWOPES, ("Swopes") was the Superintendent of Thornridge High School District 205 at all relevant times. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his individual capacity.

9. DEFENDANT THORNRIDGE HIGH SCHOOL DISTRICT 205 BOARD OF EDUCATION ("Defendant School District"), according to its website, Thornton Township High School District 205 was formed in 1892 in Harvey, Illinois. The district is composed of three high schools- Thornton Township High School in

Harvey, IL(1898; Thornridge High School in Dolton, IL (1960); Thornwood High School in South Holland, IL (1972). District 205 covers all or portions of the following communities from Thornton Township: Blue Island, Burnham, Calumet City, Dixmoor, Dolton, East Hazel Crest, Harvey, Hazel Crest, Lansing, Markham, Phoenix, Posen, Riverdale, South Holland, Thornton. District 205 serves over 5000 students in 9th through 12th grade and, at all times relevant, was the employer and principal of Defendant McGriggs.

## FACTS

10. On July 5, 2016, Defendant Milton McGriggs was caught in the act of sexually assaulting Plaintiff when her mother came home work early and found him on top of Plaintiff.

11. At the time, McGriggs was employed by Defendant School District as a softball and basketball coach.

12. Defendant McGriggs used his employment to groom Plaintiff and other students.

13. "Grooming" behavior an adult uses to build an emotional connection with children to gain their trust and break down their inhibitions for the purpose of sexual abuse. An adult may be "grooming" a child or engaging in inappropriate intimate behavior with a child when the adult creates isolated, one-on-one interactions with a child (e.g., transporting a child without the written authorization of the principal and the parent, texting or direct messaging); gives gifts to a particular child (e.g., money, clothing); crosses physical boundaries

3

(e.g., touching, giving prolonged frontal hugs, or making the child sit on the adult's lap).

14. On 18 August 2015, when Jane Doe was a freshman, Defendant McGriggs had Plaintiff's mother sign an authorization that would allow him to transport Plaintiff to and from games.

15. Plaintiff's mother was under the mistaken impression that he was doing this for multiple students and pursuant to the school's policy.

16. When Plaintiff's mother turned the letter into the school principal, J. Walton, and assistant principal, S. Valant, no one informed her that such transportation was against school policy.

17. Furthermore, neither S. Valant nor J. Walton admonished or inquired into Defendant McGriggs' seeking to transport a student.

18. As a result, Defendant McGriggs continued to have unauthorized access, isolated access to Plaintiff without the knowledge of her parent and against the express policy of the school but with the knowledge and acquiescence of the school.

19. During Plaintiff's sophomore year, Defendant McGriggs began to sexually penetrate Plaintiff and force Plaintiff to perform sexual acts on him.

20. Defendant McGriggs also gave Plaintiff an STD.

21. In April of 2016, Sherry Jackson, the Boys' Athletic Director for District 205 confronted Defendant McGriggs regarding his transportation of Plaintiff.

22. Defendant McGriggs admitted to the conduct and claimed to be Plaintiff's legal guardian.

23. Defendant McGriggs further stated that his conduct had been approved by Defendant Walton.

24. Although Jackson reviewed Plaintiff's file and knew that to be untrue, McGriggs was not disciplined and Plaintiff's parent was not informed.

25. Jackson did, however, communicate her concerns regarding Defendant McGriggs to Defendants Walton and Valant on 2 April 2016. Carbon copied on that correspondence was the school librarian and English teacher, Gerald Doughty.

26. In the April 2 communication, Jackson specifically requested that they verify that, "coaches are forbidden/shall not forge relationships with athletes…in this manner," and that, "[c]oaches are not allowed to take athletes home.

27. Further, Jackson stated that her, "concerns are many…the issues that may arise with the student-athlete with her personal situation and violation of the school board policy regarding coaches transporting athletes."

28. Jackson closed the correspondence by requesting that they, "please give [her] more directions as to how this matter should be handled?"

29. That same day, Defendant Walton responded that he, "was very concerned about the details you have shared in this e-mail. And I am highly concerned that I was named as allegedly knowing about what this your e-mail details. I, along with Mr. Valant, will begin an investigation regarding the details you have

5

provided in this e-mail. I will provide answers to the three questions you asked at the end of this e-mail. I would like to meet with you and Mr. Valant at 10:30 am on Monday, April 4, 2016 to further discuss this very serious concerns."

30. Defendant Walton then sent an email to Dr. Leotis Swopes, the District's Superintendent, informing him of Defendant McGriggs' violations and stating his intention to commence an investigation that he would provide an update on, "before or by the end of the day April 4th."

31. Carbon copied on the correspondence were Rosemary Papaleo, Steven Valant, Bradley Beilfuss (assistant principal), Vanessa Chapman (Administrative Assistant), and Sherry Jackson.

32. Despite the avowals of Defendant Walton, no investigation into Defendant McGriggs' conduct occurred; Plaintiff's parent was not notified; and, as a result, Defendant McGriggs continued to transport, isolate, and abuse Plaintiff.

33. Had Plaintiff's mother not fortuitously returned home from work early, the abuse would likely have continued unabated.

34. Two days after Defendant McGriggs was arrested, Sherry Jackson wrote and email to Defendant Valant stating inquiring, "When are you all are going to listen and stop putting your feet in your mouth. I warned you all about Mcgriggs…IVE BEEN CONTACTED BY THE PRESS. I AM SPEAKING UP TO COVER MY ASS…MAYBE IF I WERE A MAN YOU ALL WOULD LISTEN. THIS IS SAD AND PATHETIC. I AM EMBARRASSED…205 doesn't get to look good. At least they won't when the media gets the whole truth."

6

35. Likewise, on 11 July 2016 Sherry Jackson sent an email to Defendant Swopes in response to Defendant Walton's 2 April 2016 email that said: "This meeting never took place."

36. Despite the clear and unequivocal warnings of Sherry Jackson, School Defendants failed to take proper actions to stop and prevent the abuse of Plaintiff by Defendant McGriggs.

37. Defendant School District has a long-standing history of failing to protect its students from the sexual predators they employ.

    a. In 2015, a teacher and basketball coach at Thornwood High School was charged with felony criminal sexual assault. When that occurred, the District claimed it would conduct an investigation and that their student's safety was their highest priority.

    b. In December of 2017, a teacher at Thornwood High School was arrested for her sexual misconduct with a student. When that occurred, the District claimed it would, "proceed with an employee investigation" and that, "the health and well-being of the students is the district's primary concern"

    c. In 2018, the other softball coach at Thornridge High School was charged with misdemeanor battery for inappropriately touching a student. Since then, multiple other victims have come forward, including one former student who he raped and twice impregnated in or around 2010. In May of 2019, he was charged in a separate case with criminal sexual assault in relation to misconduct with another student. At that time, Defendant School District stated that they, "take the health, safety, and personal welfare of our students and their families extremely seriously" and that they were in the midst of, "an ongoing investigation." Prosecutors were also able to identify at least two other victims but they did not want to press charges.

38. As a direct and proximate result of the unlawful actions of the defendants, Plaintiff was injured, including pain and suffering, humiliation, embarrassment,

7

fear, severe emotional trauma, mental anguish, the deprivation of her constitutional rights and dignity, interference with her normal life, lost time, and attorneys' fees.

## COUNT I: SEXUAL BATTERY

39. Plaintiff realleges each of the foregoing as if fully set forth here.

40. While Plaintiff was a student attending Defendant School District, Defendant McGriggs sexually battered her. He engaged in the conduct complained of in the course and scope of his employment and under color of law.

41. As a direct and proximate result of Defendant McGrigg's conduct, Plaintiff was harmed.

WHEREFORE the Plaintiff, JANE DOE, prays for judgment against the Defendant, MILTON McGRIGGS, compensatory and punitive damages, attorney fees, interest, court costs and any other relief that this Honorable Court deems equitable and just.

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

42. Plaintiff realleges each of the foregoing as if fully set forth here.

43. Before Defendant McGriggs initiated the sexual harassment and sexual abuse of Plaintiff, he engaged in a pattern of inappropriate grooming, sexual harassment and sexual abuse of other minor female students of which Defendants knew or should have known.

44. None of the Defendants undertook appropriate measures to prohibit and prevent Defendant McGriggs from engaging in his inappropriate sexual abuse and sexual harassment of other students.

45. Defendant School District knew, or should have known, Defendant McGriggs was engaging in inappropriate sexual conduct with minor students.

46. Defendant School District's failure to properly handle reports concerning Defendant McGrigg's sexual grooming, sexual harassment and sexual abuse of minors ultimately led to, precipitated, and allowed to continue his sexual abuse of Plaintiff.

47. Defendant School District owes a duty to its students, including minor female students such as Plaintiff, to provide and employ appropriate educational services and competent teachers and counselors and safeguard its students from harmful conduct perpetrated by other District employees.

48. Defendant School District owed a duty to its minor female students, including Plaintiff, to provide a safe and secure environment for public elementary educational pursuits.

49. Defendant School District breached these duties by:
    a. Allowing an environment wherein Defendant McGriggs could utilize school property, during and after school hours, without supervision of his activities, and engage in the sexual abuse of Plaintiff;
    b. Failing to protect Doe despite its prior knowledge that Defendant McGriggs was involved in sexual grooming, sexual harassment and sexual abuse of other female students;

    c. Failing to document and investigate complaints received against Defendant McGriggs; and

    d. Failing to warn and/or disclose to individual female students and their parents the complaints received against McGriggs.

50. As a result of the Defendant School District's aforementioned breach, Defendants McGriggs and School District proximately caused injury to Doe. Defendant McGriggs engaged in the conduct complained of in the course and scope of his employment and under color of law. Defendant School District had a duty to protect Doe from the injury caused by Defendant McGriggs.

WHEREFORE the Plaintiff, JANE DOE, prays for judgment against the Defendants, compensatory and punitive damages, attorney fees, interest, court costs and any other relief that this Honorable Court deems equitable and just.

## COUNT III: FAILURE TO SUPERVISE

51. Plaintiff realleges each of the foregoing as if fully set forth here.

52. Defendant School District, through its school board members, administrators, teachers, employees, and agents, was aware of Defendant McGrigg's propensity to commit acts of sexual harassment and abuse or misconduct against female minor students, including Plaintiff, making McGriggs's future misconduct and the harm likely to result from such conduct reasonably foreseeable.

53. Defendant School District knew Defendant McGriggs was utilizing his employment and his access to school and female students to engage in predatory behavior including sexual grooming, sexual harassment and sexual abuse against minor female students.

54. At all relevant times herein, Plaintiff was under the direct and immediate control of Defendant McGriggs as an employee of the Defendant School District.

55. Defendant School District had a duty to act in a reasonably prudent manner in the supervision of its teachers, counselors and administrators, including McGriggs, and to ensure that McGriggs and other employees acted in the best interest of the health, safety and welfare of children attending their school.

56. Defendant School District by and through its agents and/or employees acted with a reckless and conscious disregard for the safety and welfare of minor female students, including Plaintiff, and were willful and wanton in its breach of its duties owed to Doe by committing one or more of the following acts or omissions:

   a. Allowing an environment wherein Defendant McGriggs could utilize school property, during and after school hours, without supervision of his activities, and engage in the sexual abuse of Plaintiff;

   b. Failing to protect Doe despite its prior knowledge that Defendant McGriggs was involved in sexual grooming, sexual harassment and sexual abuse of other female students;

   c. Failing to document and investigate complaints received against Defendant McGriggs; and

   d. Failing to warn and/or disclose to individual female students the complaints received against McGriggs.

## COUNT IV: WILLFUL AND WANTON CONDUCT

57. Plaintiff realleges each of the foregoing as if fully set forth here.

58. Defendant School District knew or should have known that its failure to properly investigate and protect students from sexual grooming behavior would likely result in injury to Doe.

59. Defendant School District knowingly and intentionally disregarded a substantial risk of harm it knew or should have known existed towards Doe I or its other students.

60. Defendant School District engaged in willful and wanton conduct by intentionally disregarding a known risk of harm to Doe by failing to investigate and/or supervise Defendant McGriggs by allowing Defendant McGriggs unfettered access to female students despite the complaints. Defendant McGriggs engaged in the conduct complained of in the course and scope of his employment and under color of law. Defendant School District had a duty to protect Doe from the injury caused by Defendant McGriggs.

61. As a direct and proximate cause of Defendant School District's utter indifference and/or conscious disregard for the safety of it students by failing to control or supervise Defendant McGriggs, the Plaintiff sustained personal, emotional and pecuniary injuries.

### COUNT V: VIOLATION OF TITLE IX

62. Plaintiff realleges each of the foregoing as if fully set forth here.

63. Defendant School District was subject to Title IX in all time periods relevant to this complaint because it received federal funds for educational programs.

64. The April 2, 2016, communication from Sherrie Jackson to Defendant Valant and Defendant Swopes gave Defendant School District actual notice of an inappropriate relationship between Plaintiff and Defendant McGriggs, including inappropriate access, inappropriate contact and communication regarding sexual advances.

65. Defendant School District did not investigate the inappropriate relationship identified by the April 2, 2016 communication.

66. Defendant's failure to investigate the inappropriate relationship constitutes deliberate indifference to a known act of sexual harassment in violation of Title IX.

67. As a direct and proximate cause of Defendant School District's deliberate indifference to the inappropriate relationship, the Plaintiff sustained personal, emotional and pecuniary injuries.

WHEREFORE, Petitioner requests that this Court grant the following relief for each count alleged:

    A. Compensatory and punitive damages for pain and suffering, humiliation, embarrassment, fear, severe emotional trauma, and mental anguish, interference with her normal life, lost time; and

    B. The deprivation of her constitutional rights and dignity; and

    C. Attorneys' fees; and

D.  Any other Relief that this Honorable Court deems equitable and just.

Respectfully submitted,

/s/ Shanita Q.T. Straw
/s/ Daniel W. Diamond
Shanita Q. T. Straw
Daniel W. Diamond

Shanita Q. T. Straw (6298398)
Daniel W. Diamond (6323815)
Golden Law
6602 Roosevelt Road
Oak Park, Illinois 60304
708 613 4433

/s/ Jeanette Samuels
Jeanette Samuels

Jeanette Samuels ()
Samuels and Associates, Ltd.
2925 S. Wabash Ave., Ste. 104
Chicago, Illinois 60616
872 588 8726