## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JANE DOE,

               Plaintiff,

               v.

THORTON TOWNSHIP HIGH SCHOOL
DISTICT 205 BOARD OF EDUCATION,
MILTON MCGRIGGS, LEOTIS SWOPES,
JAMES WALTON, and STEVE VALANT,

               Defendants.

Case No. 19 cv 7477

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Doe sued Defendants Thornton Township High School District 205 Board of Education ("the Board" or "District 205") and several District 205 employees (Thornridge High School principal James M. Walton, Jr.; assistant principal Steve Valant; Superintendent Leotis Swopes; and Thornridge softball/football coach Milton McGriggs), alleging violation of Title IX of the Civil Rights Act's Education Amendments of 1972, 20 U.S.C. § 1681–88. *See* [57]. Plaintiff also alleges state-law claims of negligent infliction of emotional distress; failure to supervise; willful and wanton conduct; and sexual battery (the latter against McGriggs only). *Id.* The Board moves to dismiss Plaintiff's complaint for failure to state a claim and for lack of jurisdiction, *see* [61], and Defendants Swopes, Walton, and Valant (collectively "the School Administrator Defendants") separately move to

dismiss on those same bases, *see* [63].[1]  For the reasons explained below, the Court denies the Board's motion [61], and denies the School Administrator Defendants' motion [63].

## I.     The Complaint's Allegations

At the time of the complaint, Plaintiff was a minor female student at Thornridge High School in Dolton, Illinois, one of three high schools comprising Thornton Township High School District 205.  [57] at ¶¶ 4, 9.  On July 5, 2016, Plaintiff's mother came home from work early and found Defendant McGriggs, Plaintiff's 49-year old coach, sexually assaulting Plaintiff.  *Id.* at ¶¶ 5, 10–11. McGriggs coached Plaintiff when she played on Thornridge's softball team, and he also supervised her in his capacity as football coach when she served as the manager of the football team.  *Id.* at ¶¶ 11, 20, 26–27.

Almost a year earlier, on August 18, 2015, Defendant McGriggs asked Plaintiff's mother to sign an authorization that would allow McGriggs to transport Plaintiff to and from softball games.  *Id.* at ¶ 15.  Plaintiff's mother agreed, believing such authorization comported with school policy and that McGriggs transported multiple softball players and students.  *Id.* at ¶ 16.  Plaintiff's mother submitted the requested authorization to Defendants Walton and Valant, neither of whom batted an eye; neither advised Plaintiff's mother that such transportation violated school policy.  *Id.* at ¶¶ 17–18.  As a result of this authorization, McGriggs had isolated access to Plaintiff, with Walton and Valant's knowledge, without Plaintiff's mother's

---

[1] McGriggs has not responded to the complaint, and the time for him to do so has passed.  Accordingly, the Court directs the Clerk to enter McGriggs' default on the docket pursuant to Rule 55(a).

knowledge, and against the express policy of the school. *Id.* at ¶¶ 17, 19. Granted such access, McGriggs routinely touched and rubbed up against Plaintiff, sexually penetrated Plaintiff, and forced Plaintiff to perform sexual acts on him while the two were on school property for scheduled football practices and during football games. *Id.* at ¶¶ 21–23. Plaintiff alleges that McGriggs conditioned Plaintiff's positions as football manager and star softball player on her continued willingness to engage in such sexual acts, and that, as a result of such acts, she wound up with a sexually-transmitted disease and her academic performance suffered. *Id.* at ¶¶ 24–27.

In April of 2016, Sherry Jackson, the boys' athletic director for District 205, asked McGriggs about his personal relationship with Plaintiff, including the circumstances of their transportation arrangement. *Id.* at ¶ 28. In response, McGriggs told Jackson that he served as Plaintiff's legal guardian and that Principal Walton had approved the transportation arrangement. *Id.* at ¶¶ 29–30. Jackson investigated, discovered that McGriggs was not Plaintiff's guardian, and expressed concerns to Defendants Walton and Valant via email on April 2, 2016. *Id.* at ¶¶ 31–32. Walton then emailed Defendant Swopes, District 205's superintendent, to advise Swopes of McGriggs' violations of school policy and to assure Swopes that he would investigate the matter. *Id.* at ¶ 37. Yet, Plaintiff alleges, neither Walton, nor anyone else at District 205, investigated the situation. *Id.* at ¶ 39.

Plaintiff alleges that McGriggs has a history of inappropriate sexual harassment of students: he impregnated a former student athlete and harassed another female student at Plaintiff's school to the point where she transferred out of

3

the District. *Id.* ¶ 14. She alleges that the District knew about McGriggs' history of misconduct and continued to employ him as a football coach and softball coach. *Id.* She also alleges that the District "has a long-standing history of failing to protect its students" (including Plaintiff) from McGriggs. *Id.* at ¶ 44. She alleges that, despite their knowledge of McGriggs' history, and despite Jackson's warnings, Defendants failed to take any action to stop or prevent McGriggs' abuse of Plaintiff. *Id.* at ¶ 43. Plaintiff alleges that, had her mother not come home to find McGriggs abusing her, and had her mother not had McGriggs arrested, the abuse would have continued unabated. *Id.* at ¶¶ 39–40, 43.

Plaintiff filed this lawsuit on November 12, 2019. *See* [1]. She amended her complaint twice, and her second amended complaint, [57], which names McGriggs, Swopes, Walton, Valant, and the District, alleges five counts: sexual battery against McGriggs (Count I); negligent infliction of emotional distress (Count II), failure to supervise (Count III), and willful and wanton conduct (Count IV) against all Defendants; and violation of Title IX against the Board (Count V).

The Board moves to dismiss, [61], arguing that Plaintiff's Title IX claim fails to state a claim and that the state-law claims should be dismissed both for failure to state a claim and (once the federal claim goes) for lack of supplemental jurisdiction; the Board also argues that the Tort Immunity Act precludes liability for Plaintiff's negligence claims. [62]. The School Administrator Defendants (Swopes, Walton, and Valant) move separately to dismiss, [63], on the same bases, [64].

## II.     Legal Standard

Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). Under this rule, the Court must construe the complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court, however, need not accept as true statements of law. *Yeftich*, 722 F.3d at 915. To survive Defendants' motion under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III.     Analysis

The Board and the School Administrator Defendants separately seek to dismiss Plaintiff's Title IX claim and her state-law claims under Rule 12(b)(6) for failure to state a claim; they also argue that, without the Title IX claim, Plaintiffs' state-law claims should be dismissed under 28 U.S.C. § 1367(c), which encourages district courts to "decline to exercise supplemental jurisdiction" over state-law claims once all federal claims are dismissed. *See* [61], [62]; [63]; [64]. The Court considers

5

the arguments in the context of specific claims, and also considers Defendants' claims of immunity, below.

### A.     Plaintiff's Title IX Claim

Title IX prohibits "sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Among other things, the statute prohibits teacher-student sexual harassment and abuse. *E.g., Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 75 (1992) ("[W]hen a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex. . . . [T]he same rule should apply when a teacher sexually harasses and abuses a student.") (quoted in *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *2 (N.D. Ill. Mar. 24, 2020)). But because Title IX does not allow for vicarious liability, students who are sexually harassed by school employees can only recover damages against the school district if a school official with "authority to institute corrective measures" had actual knowledge of, and was deliberately indifferent to, the harassment. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012). School administrators possess "actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014).

A Title IX plaintiff must also adequately allege that: (1) the educational institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of the plaintiff's education or deprived the plaintiff of access to educational opportunities or benefits

6

provided by the school. *See Doe*, 2020 WL 1445638, at *2 (citing *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997)).

The Board argues that Plaintiff does not allege that she was discriminated against or denied the benefits of her education on the basis of her sex. [62] at 8. But she does: she alleges that she was sexually assaulted, harassed and abused, and that, as a result, her grades suffered; she also alleges that her extracurricular positions were conditioned on her compliance with her coach's demands for sexual favors. Courts recognize that harassment by a teacher inherently undermines a student's educational experience and a drop off in grades is evidence of such conduct. *Doe I v. Bd. of Educ. of City of Chicago*, 364 F. Supp. 3d 849, 861 (N.D. Ill. 2019). These allegations suffice at this stage.

The Board next argues that Plaintiff alleges no facts showing that the Board was on actual notice of McGriggs' sexual harassment and abuse. Again, not so. Plaintiff alleges the Board knew that McGriggs had a history of harassment and abuse, that he impregnated a former student, and that he harassed another student to the point where she left the school. [57] at ¶ 14. She also alleges that she alerted Defendants to the fact that McGriggs was not only spending time alone with Plaintiff in his car regularly but was also lying about his authority to do so. *Id.* at ¶¶ 28–35. Defendants dispute the exact content of Jackson's emails. But whatever the precise contours of Jackson's email, when combined with Plaintiff's allegations about McGriggs' history and Defendants' knowledge of that history, Plaintiff's allegations suffice. Indeed, Plaintiff alleges that Jackson's email was enough to raise red flags

7

with Defendant Walton, who immediately wrote to his boss, promising to take care of the situation. *Id.* at ¶¶ 36–37. Plaintiff alleges that Walton never followed through though; no one took any action to investigate or correct the situation. *Id.* at ¶ 39. In fact, Plaintiff alleges that Walton said he would take corrective measures but did nothing. Based upon these allegations (which this Court accepts as true on a motion to dismiss), a reasonable jury could find both actual knowledge and deliberate indifference.

Finally, the Board argues that Plaintiff's Title IX claim fails because she fails to allege facts showing that the Board had "requisite control over the abuse." [62] at 8. Nonsense. She alleges that McGriggs, while employed by the Board's high school, sexually harassed her while she was a student at that school. And she alleges that the harassment took place on school property, before and after sanctioned school events.

Plaintiff alleges facts to show that school officials knew of the alleged abuse at the time it was happening: she alleges that McGriggs was driving her around in 2016, that Sherry Jackson advised school administrators of this fact in April 2016, and that Principal Walton agreed to look into the matter in April 2016; she alleges that McGriggs sexually abused her in 2015 and 2016, through July 2016, when plaintiff's mother discovered the abuse.[2] Plaintiff also alleges facts to suggest that McGriggs

---

[2] Plaintiff claims Sherry Jackson "communicated that Mr. McGriggs sexually harassed Plaintiff." [69] at 10. To the extent this statement is predicated solely upon Jackson's April 2, 2016 email, it is demonstrably false. But, as explained above, what she did say (which falls short of expressly communicating sexual harassment), coupled with what Plaintiff alleges Defendants already knew about McGriggs, remains sufficient to create a reasonable inference of actual knowledge, which is all that is required at this stage.

had a known history of sexual misconduct, which could also serve to impute knowledge on the Board's behalf. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605–06 (7th Cir. 2008) (explaining in dicta that even if a school district did not know a teacher was harassing a particular plaintiff, it might still be found to have "actual knowledge" if the teacher was a known "serial harasser"). Based upon these allegations, the Court declines to dismiss Plaintiff's Title IX claim against the Board.

Having said all of this, as the School Administrators correctly note, Title IX actions may only be brought against educational institutions. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997) ("Because Title IX only protects against discrimination under any education program or activity receiving federal financial assistance, we agree with the First Circuit's conclusion in *Lipsett* [*v. Univ. of Puerto Rico*, 864 F.2d 881, 884, 901 (1st Cir. 1988)] that a Title IX claim can only be brought against a grant recipient and not an individual."). To the extent Plaintiff includes the School Administrator Defendants in her Title IX claim (and it appears that she does not), the Court would grant the motion to dismiss. Plaintiff may proceed on this claim only against the educational institution that receives the federal funding.

### B.    Plaintiff's State-Law Claims

In addition to her Title IX claim, Plaintiff brings state-law claims against the Board and the School Administrator Defendants alleging negligent infliction of emotional distress (count II), failure to supervise (count III), and willful and wanton

conduct (count IV).[3] The Board and the School Administrator Defendants separately move to dismiss all of these claims for failure to state a claim and pursuant to the Illinois Tort Immunity Act.[4]

### 1. Negligent Infliction of Emotional Distress

Generally, to state a claim for negligent infliction of emotional distress under Illinois law, a plaintiff "must allege the traditional elements of negligence: duty, breach, causation, and damages"; additionally, a direct victim of alleged negligent infliction of emotional distress, like Plaintiff, must satisfy the "impact rule" by showing that the emotional distress "was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Doe v. Loyola Univ. of Chicago*, No. 18 C 7335, 2019 WL 3801819, at *3 (N.D. Ill. Aug. 13, 2019) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58 (Ill. 2016); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009)). A direct victim need not, however, allege that she suffered physical manifestations resulting from the emotional distress; emotional injuries alone suffice. *Id.*

Here, Plaintiff alleges that Defendants maintained duties to "provide and employ appropriate educational services and competent teachers and counselors and safeguard its students from harmful conduct perpetrated by other District employees," and "to provide a safe and secure environment for public elementary

---

[3] Plaintiff also brings a claim for sexual battery against McGriggs. *See* [57] at ¶¶ 46–48. Because this claim is not asserted against the moving Defendants, the Court need not discuss it here.

[4] Although Defendants also move to dismiss pursuant to 28 U.S.C. § 1367(c)(3), the Court's decision on Plaintiff's Title IX claim moots this argument.

educational pursuits." [57] at ¶¶ 54, 55. She alleges that Defendants breached these duties, and that their breaches caused her injuries, including pain and suffering, humiliation, embarrassment, fear, severe emotional trauma, mental anguish, the deprivation of her constitutional rights and dignity, interference with her normal life, lost time, and attorneys' fees. *Id.* at ¶¶ 56, 45. She also alleges that, as a result of Defendants' negligence, she suffered sexual assault and battery, unwanted sexual advances, and unconsented to sexual interactions, as well as a sexually-transmitted disease. *Id.* at ¶¶ 10, 21, 23–27. She alleges, in short, the elements of negligence, a physical impact, and emotional distress. As a result, the Court declines to dismiss Count II under Rule 12(b)(6).

### 2.    Failure to Supervise

In count III, Plaintiff asserts a failure to supervise claim against all Defendants. [57] at ¶¶ 58–63. To successfully maintain a "willful and wanton failure to supervise claim against a public entity, a plaintiff must show that the defendant engaged in a 'course of action that proximately caused the plaintiff's injuries, including having prior knowledge of similar incidents.'" *Sterling v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, No. 19-CV-05599, 2021 WL 809763, at *8 (N.D. Ill. Mar. 3, 2021) (quoting *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010)). In addition to arguing immunity, which the Court discusses below, Defendants argue that Plaintiff has failed to state a claim. In particular, they argue, she has failed to allege facts demonstrating that they had prior knowledge of similar incidents. But, as discussed above, she has alleged facts showing knowledge. She

alleges that "Defendant McGriggs had a history of inappropriate harassment" including harassment and contact that caused another female student at the school to transfer out of the district; she also alleges that McGriggs impregnated another female student. [57] at ¶ 14. And she alleges that Defendant School district "had actual knowledge of" McGriggs' history and continued to employ him as a football and softball coach. *Id.* These allegations suffice, and the Court declines to dismiss Count II based on the sufficiency of her allegations.

### 3. Willful and Wanton Conduct

In Count IV, Plaintiff alleges "willful and wanton conduct." But Illinois law does not recognize a "separate and independent tort of willful and wanton conduct." *Doe*, 2020 WL 1445638, at *14 (quoting *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. App. Ct. 2010)); *see also Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994)). Rather, willful and wanton conduct constitutes an aggravated form of negligence upon which a plaintiff can recover damages by alleging—and later proving—the elements of a negligence claim and "a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Krywin*, 938 N.E.2d at 452. But Plaintiff does not allege a separate claim of negligence. As a result, the Court construes count IV as claiming negligence, based upon willful and wanton conduct.

To recover damages based upon a defendant's alleged negligence involving willful and wanton conduct, a plaintiff must prove, that the "defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the

proximate cause of the plaintiff's injury." *Doe*, 2020 WL 1445638, at \*14. And then, in addition, she must also allege "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Id.* (citing *Doe ex rel. Ortega-Piron*, 820 N.E.2d 418, 423 (Ill. 2004)).

Generally, a person has "no duty under Illinois law to act affirmatively to protect another from criminal conduct by a third person." *Doe I*, 364 F. Supp. 3d at 869 (citing *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 514 (7th Cir. 2010); *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007)). Where, however, the defendant has a "special relationship" with the plaintiff, that relationship may give rise to a duty to protect under certain circumstances. *Id.* For example, "'a school district with unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect.'" *Id.* (quoting *Doe-2*, 593 F.3d at 515 *and* citing *Doe v. Dimovski*, 783 N.E.2d 193, 200 (Ill. 2003) (allegations that school board failed to act upon learning of the sexual transgressions of a teacher with one student were sufficient to show a conscious disregard for the safety of other female students)).

Here, Plaintiff's allegations concerning McGriggs' prior sexual misconduct, coupled with her allegation that Defendants knew about such conduct, and the allegation that Jackson alerted Defendants to the fact that McGriggs frequently spent time alone with Plaintiff in his car, in violation of school policy, support the argument that Defendants had a duty to protect Plaintiff from McGriggs (and that their failure to do so despite their knowledge makes their conduct willful and wanton).

13

In moving to dismiss Plaintiff's negligence claims, Defendants rely upon *Doe v. Bridgeforth*, 102 N.E.2d 710 (Ill. App. Ct. 2018). In *Bridgeforth*, the court determined that the plaintiff failed to prove willful and wanton conduct within the context of a claim arising out of a sexual assault that occurred when a coach was transporting a student. Although the facts surrounding the alleged sexual misconduct are eerily similar in the two cases, the cases differ significantly: the *Bridgeforth* plaintiff did not allege that the sexually assaulting teacher had a history of such conduct such that Defendants knew or should have known he posed a danger to the student he was transporting. 102 N.E.2d at 725. Moreover, that case went to trial after full discovery, rather than being tossed out on a motion to dismiss.

As to knowledge, the facts alleged here paint quite a different picture. Plaintiff alleges that the Board and the School Administrator Defendants had notice of the relationship between McGriggs and Plaintiff, including through both a permission slip and an email from Sherry Jackson; she also alleges that Defendants knew McGriggs previously victimized other female students, creating a plausible inference that they knew Plaintiff faced an impending danger of sexual assault from McGriggs. She also alleges that they failed to take any action to protect her from that danger, and that, as a result, she suffered damages. The Court will not dismiss her claim based upon the sufficiency of her allegations.

### C. Tort Immunity

The Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101–10-101, embodies the Illinois legislature's "attempt to create certain uniform rules of immunity as

exceptions to the general rule of municipal liability." *Aikens v. Morris*, 583 N.E.2d 487, 490 (Ill. 1991). The Act supplies an affirmative defense, which means Defendants bear the burden of establishing its applicability. *Taylor v. Bd. of Educ. of City of Chi.*, No. 18 C 7874, 2020 WL 5076718, at *7 (N.D. Ill. Aug. 27, 2020); *Hill v. Cook County*, No. 18 C 8228, 2020 WL 2836773, at *20 (N.D. Ill. May 31, 2020). Although Plaintiff need not anticipate affirmative defenses in pleading her complaint, she may plead herself out of court by alleging facts sufficient to implicate the Act in the complaint itself. *Doe I*, 364 F. Supp. 3d at 863 (citing *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014)).

The Board and the School Administrator Defendants separately claim immunity for any liability on Plaintiff's state-law claims. The Board and the School Administrator Defendants all claim immunity under Sections 2-201, 4-102, and 3-108(a) of the Tort Immunity Act. The Court considers each in turn below.

### 1. Section 2-201

Defendants first assert immunity under Section 2-201 of the Act, which provides that:

> a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 Ill. Comp. Stat. Ann. 10/2-201. Although this section only expressly immunizes "public employees," Illinois courts hold that local public entities "are also clothed with immunity if their employees are not liable for the injury resulting from their acts or

15

omissions." *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 997 (N.D. Ill. 2017) (citing *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 762–63 (Ill. 2002)); *see also Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874, 885 (N.D. Ill. 2015). This immunity only applies, however, where a public employee has engaged in both the determination of policy *and* the exercise of discretion when performing the act or omission upon which Plaintiff bases her injury. *Doe I*, 364 F. Supp. 3d at 866; *LaPorta*, 277 F. Supp. 3d at 997.

Defendants argue that Section 2-201 immunizes them from liability for Plaintiff's negligence claims, which stem from the exercise of discretion in balancing, enforcing, and implementing school policies (including the policies relating to teacher/parent and teacher/student interactions). [64] at 6–7; [74] at 7–8. Defendants may ultimately prevail on this argument. But not now. The Section 2-201 analysis "resists precise formulation." *Snyder v. Curran Township*, 657 N.E.2d 988, 992 (Ill. 1995). For this reason, courts typically defer decisions regarding discretionary immunity under Section 2-201 until the parties have developed a full factual record that illuminates which of employees acted and whether those actions qualify as discretionary policy decisions. *See Doe I*, 364 F. Supp. 3d at 867 (collecting cases).

Moreover, the Illinois Supreme Court has emphasized that, before a court can determine whether a governmental unit or employee is immune from negligence liability based upon willful and wanton acts or omissions, it must first determine if any duty of care by the public entity exists. *Village of Bloomingdale v. CDG*

*Enterprises, Inc.*, 752 N.E.2d 1090 (Ill. 2001) (cited in *Albert v. Bd. of Educ. of City of Chicago*, 24 N.E.3d 28, 37–38 (Ill. App. Ct. 2014)). The operative complaint does not explain who made the decision to hire McGriggs or to address (or not address) any relationship between McGriggs and Plaintiff (or McGriggs and Plaintiff's mother); nor does the limited record before the Court explain the specific actions taken in connection with the revelations about McGriggs' behavior. At the pleadings stage, this Court cannot conclude as a matter of law that Section 2-201 immunity applies. In fact, if what Plaintiff alleges proves to be true, such immunity likely will not apply. *See Brookman as next friends of A.B. v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, No. 18 C 7836, 2019 WL 4735395, at *4 (N.D. Ill. Sept. 27, 2019) (there is no need to "weigh competing interests" before stopping sexual assault; though the "mode of intervention" may be discretionary, "the need to intervene is not.").[5] This Court thus denies Defendants' motion to dismiss Plaintiff's claims on this basis.

### 2. Section 4-102

Section 4-102 of the Tort Immunity Act immunizes local public entities for "failure to: (1) establish a police department; (2) otherwise provide police protection; or, if police protection is provided, (3) failure to provide adequate police protection service." *Albert*, 24 N.E.3d at 43 (citing 745 Ill. Comp. Stat. Ann. 10/4-102; *DeSmet v. County of Rock Island*, 848 N.E.2d 1030 (Ill. App. Ct. 2006)). For purposes of the Act, a school district and any other local governmental bodies such as the Board count

---

[5] Defendants cite *Brookman* to support their immunity claim, and, to be sure, it holds that "a school administrator's response to harassment and bullying is a discretionary, policymaking decision entitled to immunity under Section 2-201." *Brookman*, 2019 WL 4735395, at *3. But the allegations here go far beyond bullying and harassment; Plaintiff alleges rape.

as a "local public entity." *Id.* (citing 745 ILCS 10/1-206). And the Illinois Supreme Court has instructed that "functions traditionally performed by police, such as weapons detection, traffic control, and crowd security and control" are immunized under section 4-102. *Id.* Plaintiff's complaint, however, does not claim Defendants failed to provide adequate police protection; rather, she alleges that Defendants knew McGriggs posed a danger to her yet failed to protect her from that danger. Section 4-102 does not apply here.

### 3. Section 3-108(a)

Finally, Defendants argue that Section 3-108(a) of the Tort Immunity Act insulates them from liability for claims arising from a failure to supervise and the negligent infliction of emotional distress. [64] at 7–8. Section 3-108(a) of the Tort Immunity Act provides:

> neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

745 ILCS 10/3-108(a). Plaintiff alleges the Defendants had a duty to reasonably supervise teachers, counselors, and administrators, and acted with reckless and conscious disregard for the safety and welfare of its students by ignoring sexual abuse. She alleges that McGriggs had a history as a sexual predator at the school, that Defendants knew about that history, and that they failed to take any action to stop McGriggs or to protect their students from sexual harassment and abuse. [57] at ¶¶ 14, 43–44. She alleges that Defendants "knowingly and intentionally disregarded a substantial risk of harm it knew or should have known existed towards

18

Plaintiff and their other students, *id*. at ¶¶ 66–67, and that they intentionally disregarded the known risk of harm to Plaintiff by failing to investigate or supervise McGriggs and by allowing him unfettered and isolated access to Plaintiff and other female students, despite their knowledge of McGriggs' predatory behavior, *id*. at ¶ 67. She alleges that Defendants' failure to control or supervise McGriggs (knowing what they knew about him) caused Plaintiff personal, emotional, and pecuniary injuries. *Id*. at 68. This is not a case where a teacher failed to supervise or monitor the bad behavior of another student; Plaintiff alleges that Defendants hired a known sexual predator and then allowed him to have isolated access to her, failing to take any action to protect her from the known risk of sexual abuse, which then occurred. The allegations that Defendants effectively allowed the sexual abuse of the minors they were charged to protect and educate, if true (and the Court assumes they are true at this point) suffice to constitute willful and wanton conduct. Ultimately, Plaintiff might not be able to prove that the Defendants are guilty of willful and wanton conduct, but she most certainly has alleged as much. Defendants obviously dispute all of these allegations. But such disputes will be resolved at summary judgment or trial, not on a motion to dismiss. Accordingly, the Court will not dismiss her claims under Section 3-108(a).

## IV. Conclusion

For the reasons explained above, this Court denies Defendants' motions to dismiss [61], [63]. Defendants shall answer the operative complaint [57] by April 12, 2021, and the parties shall file a joint status report by April 27, 2021, proposing a

reasonable fact discovery deadline, indicating whether they will need expert discovery (and, if so, proposing a schedule for same), and indicating whether they are interested in a settlement conference. This Court will set case management deadlines in a future order.

Date: March 29, 2021

ENTERED:

John Robert Blakey
United States District Judge